IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-60202
Summary Calendar
_____


SCOTTY D. WHITE,

Plaintiff-Appellee

versus

LYNN BOYTE, Individually and
as Sheriff of Lincoln County,
Mississippi,

Defendant-Appellant.


_____

Appeal from the United States District Court for the
Southern District of Mississippi
(3:94-CV-114-WS)
_____

May 22, 1997
Before GARWOOD, JOLLY AND DENNIS, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Plaintiff-appellee Scotty White (White) filed this Mississippi
law diversity suit against defendant-appellant Lynn Boyte (Boyte),
Sheriff of Lincoln County, Mississippi, alleging that Boyte was
negligent in allowing inmates at the Lincoln County jail to assault
White while he was in jail for failing to appear at his arraignment
on the charge of driving while under the influence of alcohol. The

---

[*] Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

jury returned a verdict in favor of White and awarded him $50,000 in damages for future disability and impairment. For the following reasons, we reverse.

## Facts and Proceedings Below

White, a citizen of Louisiana, was arrested on May 22, 1993, in Lincoln County, Mississippi, for driving while under the influence of alcohol. To avoid waiting in jail until the date of his arraignment, White made bail by obtaining a bond from Jim Ladewig (Ladewig), a bondsman. After making the bail payment, he was released from jail. He was scheduled to return to court on May 28, 1993. When White failed to show up for his arraignment, Ladewig obtained an arrest warrant on White for contempt of court. On June 7, 1993, Ladewig arrested White and brought him to the Lincoln County jail. He was placed in a cell on the first floor of the jail, which was used to temporarily hold pre-trial detainees. At approximately 10:00 p.m., he asked a trusty if he could have a mattress and take a shower. The trusty took him upstairs to the cells on the second floor of the jail, which held both pre-trial detainees and convicted felons.

White was placed in the cell with George Dubois, an acquaintance of his. Once in the cell, Dubois approached White and accused him of stealing his car and items from his house. An altercation arose between White and Dubois, at which point two of

2

the inmates, Ollie Porter (Porter) and Ricky Adams (Adams), began punching White in the face.  Porter, who was wearing combat boots, kicked White in the head, chest, and ribs.  Other inmates, including Cedric Watson (Watson) and Steven Williams (Williams), took White's money and punched and kicked him in the face and ribs. Throughout the night, the inmates repeatedly assaulted White.  As a result of the assaults, White suffered serious injuries to his right eye and ear.[1]

The next morning, when the trusties brought breakfast to the cell area, one of the trusties noticed the injuries to White's head and asked him if anything had happened to him.  Afraid that the inmates would retaliate against him for disclosing what had happened, White replied that he had sustained his injuries before arriving at the jail.  After eating breakfast, the inmates went back to sleep, at which time White clandestinely used a pay phone which was located inside the cell area to call his mother, requesting that she get him out of jail.  Later that morning, a jailor came to the cell area and removed White from the cell. White told an investigator with the Lincoln County Deputy Sheriff that he had been beaten in the cell.  After being interviewed he was taken to a hospital emergency room, where he was treated for his injuries.

On March 8, 1994, White filed this suit in the United States

---

[1]    The five inmates subsequently pleaded guilty to assault and robbery on White.

3

District Court for the Southern District of Mississippi, Jackson Division, alleging that under Mississippi law Sheriff Boyte was negligent and legally responsible for White's injuries at the hands of other inmates (1) by placing him in a cell with individuals who Boyte knew were dangerous and (2) by failing to maintain a proper lookout or monitoring of White's cell during the time of the alleged assault.[2] The jury rejected White's first negligence claim, but returned a verdict in favor of White on his second claim. The jury awarded White $50,000 for future disability and impairment. Boyte then filed his notice of appeal to this Court.

**Analysis**

Boyte's primary argument on appeal is that the district court erred in failing to grant his motion for judgment as a matter of law based on state law qualified immunity.[3] Under Mississippi law,

---

[2] Jurisdiction was grounded in diversity, Boyte being a citizen of Mississippi and White a citizen of Louisiana. No federal claims are involved.

[3] Alternatively, Boyte maintains the court erred in denying his request that the jury be instructed that if it found that Boyte did not substantially exceed his authority as sheriff or commit an intentional tort against White, Boyte could not be liable for White's damages. Boyte's proposed jury instruction on qualified immunity read as follows:

> "The Court instructs the jury that Sheriff Lynn Boyte's duties with regard to the housing of inmates in the Lincoln County jailer [sic] are discretionary in nature and, as a consequence, he is entitled to the protection of qualified immunity. The law relegates to all sheriffs the power of personal deliberation, decision and judgment in the performance of his duties as they relate to prisoners. This discretion entitles a sheriff to qualified immunity so long as he does not

4

government officials who are sued for damages in a civil action enjoy qualified immunity from tort liability unless they breach "a legal duty [that] causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort." *Evans v. Trader*, 614 So.2d 955, 957 (Miss. 1993) (citations omitted); *see also Webb v. Jackson*, 583 So.2d 949-50 (Miss. 1991). A ministerial duty or function is one which has been "positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *Sorey v. Kellet*, 849 F.2d 960, 963 (5th Cir. 1988); *see also Mohundro v. Alcorn County*, 675 So.2d 848, 853 (Miss. 1996); *Westbrook v. City of Jackson*, 665 So.2d 833, 837

---

substantially exceed his authority or intentionally harm someone.

> If you find from a preponderance of the credible evidence in this case that Sheriff Lynn Boyte did not substantially exceed his discretionary authority or intentionally commit harm to the Plaintiff, Scotty White, then it is your sworn duty to return a verdict in favor of Sheriff Lynn Boyte."

As we sustain Boyte's claim that he was entitled to qualified immunity as a matter of law, we need not actually reach this issue. However, as our discussion reflects, even if there were a fact issue on qualified immunity, the failure to grant this instruction would doubtless be reversible error.

(Miss. 1995); *Womble By and Through Havard on Behalf of Womble v. Singing River Hosp.*, 618 So.2d 1252, 1265 (Miss. 1993); *Barrett v. Miller*, 599 So.2d 559, 567-68 (Miss. 1992); *McFadden v. State*, 580 So.2d 1210, 1217 (Miss. 1991); *Sykes v. Grantham*, 567 So.2d 200, 211-12 (Miss. 1990).

Qualified immunity protects only those public officials engaged in discretionary decision making. *See, e.g., Region VII, Mental Health-Mental Retardation Center v. Isaac*, 523 So.2d 1013, 1016-18 (Miss. 1988) (holding that commissioners were acting in their discretionary role in establishing supervised apartment program and were therefore immune from liability for death of a client stabbed by his roommate); *Davis v. Little*, 362 So.2d 642, 644-45 (Miss. 1978) (holding that supervisor charged with negligence while driving county-owned truck was not entitled to qualified immunity as the act of driving a vehicle did not involve official discretionary decision-making process).

Both of the claims brought by White were grounded in negligence. Because negligence is not an intentional tort, Boyte is entitled to qualified immunity unless his duty in maintaining the safety of his jail can be classified as a ministerial duty or, if the duty was discretionary, that he substantially exceeded his authority. *See Webb*, 583 So.2d at 950.

Clearly, Boyte's duties respecting maintenance of jail safety were discretionary, not ministerial. He had broad discretion in

6

making decisions and formulating policies regarding safety and protection of inmates in his jail. *See McQueen v. Williams*, 587 So.2d 918, 922 (Miss. 1991) (holding that sheriff's duty to "safely keep in the jail of his county all persons committed by order of [the] courts" was discretionary in nature). Boyte's policy decisions, such as decisions regarding where to place inmates and how often jailers and trusties were to check on the inmates, were not guided by any statute, guideline, or procedure. Indeed, White did not present any evidence at trial that demonstrated that Boyte's duty involved no discretion. *Id.; see also McFadden v. State*, 542 So.2d 871, 880-81 (Miss. 1989) (holding that Commissioner and Superintendent at the Mississippi State Penitentiary had broad discretion in matters relating to prison operations, including assignment, placement, housing, and classification of inmates).

In support of his argument that Boyte's duties with respect to maintaining safety in the jail were ministerial, White cites Miss. Code Ann. § 19-25-35. The Mississippi statute, however, only generally requires that the sheriff "take into his custody, and safely keep, in the jail of his county, all persons committed by order of [the] courts . . . ." The statute does not positively direct or specifically designate the sheriff's specific duties vis-à-vis jail safety policies and procedures. *Cf. Coplin v. Francis*, 631 So.2d 752, 755 (Miss. 1994) (holding that construction of

7

county road bridges in accordance with specifications mandated by Miss.Code Ann. § 65-21-1 was ministerial in nature, thus precluding supervisor from raising qualified immunity).

In addition to the Mississippi statute, White also relies on *Farmer v. State for Use of Russell*, 79 So.2d 528 (Miss. 1955). In *Farmer*, the widow of a prisoner who died while in the sheriff's custody sued the sheriff, arguing that the sheriff failed, after repeated requests from the prisoner, to take the prisoner to a doctor to receive treatment for serious stomach ulcers that caused his death. The Mississippi Supreme Court held that the sheriff was liable for the prisoner's death because he negligently failed to provide reasonable care to the prisoner.

White's reliance on *Farmer* is misplaced. *Farmer* was decided before the doctrine of qualified immunity was fully developed by the Mississippi courts. Since *Farmer*, the Mississippi courts have substantially clarified the qualified immunity doctrine. *See, e.g., Bogard v. Cook*, 586 F.2d 399, 415 (5th Cir. 1978) (explaining that "[*Farmer* and its progeny] were decided prior to *Scheuer v. Rodes*,[94 S.Ct. 1683 (1974),] at a time when the doctrine of qualified immunity was in its appellate court infancy."), *cert. denied*, 100 S.Ct. 173 (1979). Moreover, it does not appear that the qualified immunity issue was raised by the parties or considered by the court in *Farmer*, as the court did not mention or

8

discuss qualified immunity anywhere in its opinion.[4]

Finally, the evidence reflects that Boyte did not substantially exceed his discretion in any way. To the contrary, the undisputed evidence at trial established that Boyte acted well within his discretion in implementing a policy that required the jailers on duty to check periodically on the inmates. Boyte testified that the jailers on duty were required to check on the inmates on a periodic basis, and Trusty Carol Britt and Jailer Retha Bates testified that the policy at the jail was to check on inmates during the night once every thirty to forty-five minutes. Although it is unclear whether any of the jailers or trusties *actually* checked the inmates *the particular night* White was beaten in his cell, we cannot say that there is any evidence that *Boyte* greatly exceeded his discretion in establishing jail policy in these respects or in any other relevant particular.[5]

---

[4] The *Farmer* court did discuss the applicability of judicial-type immunity. However, the court found that the immunity did not apply because the sheriff failed to take the necessary initial steps of examining the prisoner before forming an opinion as to whether the prisoner needed medical attention. Without any examination, the court opined, the sheriff could not claim that his "failure to call a doctor was because of any opinion, judicial or otherwise, formed by the sheriff . . . that the prisoner did not need medical care." *Farmer*, 79 So.2d at 530.

[5] Boyte raises other arguments in his brief, including complaints that the jury failed to follow the court's instructions and that the court should have excluded the testimony of one of White's expert witnesses. Because we conclude that Boyte is entitled to qualified immunity, we need not address the merits of these arguments.

## Conclusion

For the foregoing reasons, the judgment of the district court is

REVERSED.